# UNITED STATES DISTRICT COURT
для the

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 14 2013

at 3 o'clock and 20 min P M.
SUE BEITIA, CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| BENJAMIN PIERCE BISHOP | ) | 13-0207 RLP |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

**SEALED BY ORDER OF THE COURT**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  5/14/2012 & 11/19/2012,  in the county of  Honolulu  in the  District of  Hawaii , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count 1, 18 U.S.C. Section, 793(e) | On or about May 14, 2012: Communication of Information Related to the National Defense to a Person Not Entitled to Receive it |
| Count 2, 18 U.S.C. Section, 793(e) | On or about Novmeber 19, 2012: Unlawful Retention of Document & Plans Relating to the National Defense |

This criminal complaint is based on these facts:

(See Attached Affidavit of FBI Special Agent Scott Freeman)

☐ Continued on the attached sheet.

*Complainant's signature*

Scott Freeman, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  03/14/2013

City and state:  Honolulu, Hawaii

Richard L. Puglisi
*Printed name and title*
*Judge's signature*

# AFFIDAVIT OF SCOTT FREEMAN

## AGENT EXPERIENCE

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, and have been so employed for approximately two years. I am currently assigned to the Honolulu Field Office of the FBI. I have completed FBI training in foreign counterintelligence matters, which has included training in criminal violations associated with espionage. Since January 2011, I have been assigned to a Counterintelligence squad where my primary responsibility is the investigation of matters involving foreign counterintelligence. I have also worked extensively with representatives of other U.S. Intelligence Agencies on matters related to foreign counterintelligence. In addition, I have worked collectively on this investigation with multiple FBI agents and analysts who possess many years of experience in counterintelligence investigations such as the one described in the affidavit. As a result of the background, training and experience, of both myself, and other agents with whom I am collectively working on this investigation, I am familiar with tactics, methods, techniques and tradecraft of foreign intelligence services and their agents, as well as persons who may be acting in violation U.S. laws forbidding espionage activity as well as persons disclosing classified information in an unauthorized manner.

2. I am the FBI Case agent primarily responsible for investigating the activities of BENJAMIN PIERCE BISHOP, an employee of a defense contractor with a contract with U.S. Pacific Command (USPACOM). As described below, the evidence will show that there is probable cause that BISHOP has communicated U.S. national defense information, the unauthorized disclosure of which could cause serious damage to the national security of the United States. The person to whom BISHOP communicated such information is a citizen of the People's Republic of China who my investigation has revealed is not entitled to receive national defense information belonging to and under the control of the United States.

   a. The statements contained in this affidavit are based, in part, on information provided by cooperating witnesses, on investigations by FBI and the Naval Criminal Investigative Service

(NCIS), on court authorized electronic and physical surveillance and search activity, and on my experience and background as an FBI Special Agent. Because this affidavit is being submitted for the limited purpose of securing authorization for the execution of an arrest warrant, I have not included each and every fact known to me concerning the investigation. I have set forth only the facts that I believe are necessary to establish the necessary foundation supporting issuance of an arrest warrant for BISHOP.

3. Based on my investigation and the facts contained herein, your affiant submits there is probable cause to believe that BISHOP has committed violations of Title 18, United States Code, Section 793 (e). Section 793(e) provides: "whoever having unauthorized possession of, access to, or control over any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it."

4. There is probable cause to believe that evidence of these violations more specifically described below will be found on and in the premises, person, and vehicle described in this affidavit.

## BACKGROUND

5. BISHOP, age 59, was an activated reservist with the U.S. Army working at USPACOM from approximately March 2009 to April 2012. USPACOM is a unified combatant command of the U.S. Armed Forces which protects and defends the territory of the U.S. its people, and its interests. The command is based on the island of Oahu, Hawaii, and is directly responsible for the military security of the entire Pacific region. Currently, BISHOP is an employee of a defense contractor with a contract with USPACOM, and has worked in that capacity since approximately May 2012 in the District of Hawaii. BISHOP has held a TOP SECRET

2

security clearance since July 2002. He held Secure Compartmented Information (SCI) access from November 2002 to April 2012.

6. Pursuant to Executive Order 13526, national security information is classified as "Top Secret," "Secret," or "Confidential." The designation "Top Secret" applies to information, the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security. The designation "Secret" applies to information, the unauthorized disclosure of which reasonably could be expected to cause grave damage to the national security. The designation "Confidential" applies to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security. Access to classified information at any level may be further restricted through compartmentation in secure compartmented information (SCI) categories. Classified information, of any designation, may only be shared with persons determined by an appropriate U.S. government official to be eligible for access to classified information, who have signed an approved non-disclosure agreement and who possess a need to know. If a person is not eligible to receive classified information, classified information may not be disclosed to that person.

7. BISHOP has possessed a TOP SECRET U.S. Security Clearance since July, 2002. As a person holding a TOP SECRET security clearance, BISHOP has been subject to multiple security briefings concerning the handling, marking, storage, and restrictions regarding the disclosure of classified national defense information. All persons, before they obtain high level security clearances, are required to sign non-disclosure forms affirming that they have been instructed on the requirements for the proper handling of classified materials. These persons, like BISHOP, have also been warned that unauthorized disclosure of classified information is a violation of federal espionage laws, including 18 U.S.C. §793, and punishable as a criminal offense. In April 2012, BISHOP received a briefing which reminded him of his obligation to not to disclose classified information or material in an unauthorized fashion. In addition, on March 25, 2011, BISHOP received a briefing in accordance with his duties with USPACOM that authorized him to be a courier of SECRET or TOP SECRET material. A courier is someone who is permitted to securely carry classified information in a secure pouch or container from one secure facility to another secure facility. If a person is not an authorized courier, they may not transport classified

information, even if they possess an appropriate security clearance. As part of that briefing, BISHOP acknowledged that he understood his responsibilities regarding the handling and transport of classified information. BISHOP signed a memo acknowledging that the couriering of classified material is a last resort and driven by operational considerations, that he is personally liable and responsible for any classified material in his possession, and that he read and understood the Courier Procedures and Briefing Memo. BISHOP's employment at USPACOM has required him to work in a Secure Compartmented Information Facility (SCIF) which is specifically adapted for the handling, storage and discussion of classified information at varying levels of security.

## INVESTIGATION

8. My investigation has revealed that between May 2012, through December 2012, BISHOP communicated and transmitted classified information related to the national defense on multiple occasions to PERSON 1, a person not entitled to receive such information.

9. Person 1 is a 27 year old female citizen of the People's Republic of China who does not possess, and has never possessed a U.S. security clearance and thus is not entitled to receive U.S. classified information. PERSON 1 is residing in the U.S. as a student on a J1 Visa. PERSON 1 and BISHOP originally met in Hawaii during a conference regarding international military defense issues. Based on my training and experience, PERSON 1 may have been at the conference in order to target individuals such as BISHOP who work with and have access to U.S. classified information regarding PERSON 1's purported interests. After their initial meeting, BISHOP and Person 1 commenced a relationship which they subsequently maintained through correspondence and personal visits. The investigation has revealed, through both physical and electronic court-authorized surveillance conducted by your affiant and other FBI agents, and materials supplied to your affiant by other government agencies that BISHOP has been involved in an intimate, romantic relationship with PERSON 1 since June 2011 and has affirmatively hidden this relationship from U.S. Government officials. Department of Defense (DOD) Directive 5240.06 requires personnel, such as BISHOP, who maintain a security clearance, to report any contacts with foreign persons. BISHOP, who has daily access to a large volume of highly sensitive U.S. classified national defense information, is aware of his affirmative duty to

report any contacts with foreign nationals. In September 2011, BISHOP filed a form SF-86 Questionnaire for National Security Positions in which he is required to report foreign contacts. Despite this requirement, in September 2011, BISHOP failed to list PERSON 1. My investigation has revealed that BISHOP was in a romantic relationship with PERSON 1 at that time and BISHOP was required to report that contact. In August 2012, BISHOP attended a briefing regarding requirements of reporting foreign contacts. In February 2013, BISHOP submitted a SF-86 certification form where he revised specific information that had changed from the previously submitted form. On that SF-86 certification form, BISHOP indicated that there were no changes to the foreign contacts section of the previously submitted SF-86 form. As of this date, BISHOP has not properly reported contact with PERSON 1 as required by DOD directive 5240.06 which requires such disclosures for those military personnel who possess a security clearance. In February 2012, BISHOP submitted a Request for Leave to travel to the United Kingdom to visit PERSON 1. On the form, BISHOP changed the name of PERSON 1 by slightly changing her given name to a masculine form of the same name and by adding a letter to the surname of PERSON 1, thereby obscuring the gender and identity of PERSON 1.

10. My investigation has revealed through court authorized electronic surveillance of BISHOP's personal email account and telephone conversations, along with lawful and authorized physical searches of BISHOP's residence and work environment that BISHOP has unlawfully communicated or transmitted U.S. classified information to PERSON 1 on multiple occasions, as set forth below in paragraphs 11 through 15.

11. Court authorized electronic surveillance of an email address known to be used by BISHOP revealed that on May 14, 2012 BISHOP transmitted national defense information, regarding existing war plans, information regarding nuclear weapons, and relations with international partners, to an email address known to be used by PERSON 1. The Office of Secretary of Defense for Policy reviewed the contents of that email message between BISHOP and PERSON 1 and determined that portions of the information transmitted therein are classified at the SECRET level in that the unauthorized disclosure of such information could cause serious damage to U.S. national security.

5

12. Court authorized electronic surveillance of a telephone known to be used by BISHOP revealed that on September 2, 2012, BISHOP orally communicated classified national defense information, regarding planned deployment of U.S. strategic nuclear systems, as well as the ability of the U.S. to detect low and medium range ballistic missiles of foreign governments, to PERSON 1 by placing a call from his telephone to a telephone number known to be used by PERSON 1. The U.S. Missile Defense Agency (MDA), the original classification authority governing the information communicated by BISHOP, has reviewed a transcript of the telephone conversation between BISHOP and PERSON 1 and has determined that the information communicated therein is classified at the SECRET level in that the unauthorized disclosure of the information could cause serious damage to U.S. national security.

13. In addition, court authorized electronic surveillance of a telephone known to be used by BISHOP revealed that on September 13, 2012, BISHOP orally communicated classified national defense information, regarding the deployment of U.S. early warning radar systems in the Pacific rim and the ability of the U.S. to detect short and medium range ballistic missiles of foreign governments, to PERSON 1 by placing a call from his telephone to a telephone number known to be used by PERSON 1. The MDA has reviewed a transcript of the telephone conversation between BISHOP and PERSON 1 and has determined that the information communicated therein is classified at the SECRET level in that the unauthorized disclosure of such information could cause serious damage to U.S. national security.

14. In addition, court authorized electronic surveillance of a telephone known to be used by BISHOP revealed that in a second call on September 13, 2012, BISHOP orally communicated classified national defense information, regarding the proposed deployment of a U.S. radar system in the Pacific rim, to PERSON 1 by placing a call from his telephone to a telephone number known to be used by PERSON 1. The MDA has reviewed a transcript of that telephone conversation between BISHOP and PERSON 1 and has determined that the information communicated therein is classified at the SECRET level in that the unauthorized disclosure of such information could cause serious damage to U.S. national security.

15. Also, court authorized electronic surveillance of an email address known to be used by BISHOP revealed that in an email on September 13, 2012, BISHOP transmitted national defense

information, regarding the proposed deployment of a U.S. radar system in the Pacific Rim, to an email address known to be used by PERSON 1. The MDA reviewed the contents of that email message between BISHOP and PERSON 1 and determined that portions of the information transmitted therein are classified at the SECRET level in that the unauthorized disclosure of such information could cause serious damage to U.S. national security.

16. On multiple occasions during the relevant time frame, PERSON 1 has represented to BISHOP that she did not want him to disclose classified information to her. BISHOP represented to her that he would not. Nevertheless, PERSON 1 continued over time to question BISHOP on matters relating to the subject matter of his work. Additionally, despite BISHOP's representations to PERSON 1 and he continued to disclose classified information to her after representing that he would not.

17. A court authorized covert physical search of BISHOP's residence located at 92-1479 Makakilo Drive, Kapolei HI was executed in November 2012. This search discovered approximately 12 individual documents each with classification markings at the SECRET level. BISHOP's residence is not an authorized location for storage of classified information and BISHOP was never authorized to remove and retain these documents. One document discovered during the search was entitled the Defense Planning Guidance 2014-2018. This document contains Fiscal Year 2014-2018 Defense Planning Guidance governing the resource allocation of the Department of Defense and is the definitive planning document for force development, articulating the mission requirements for the Department of Defense at the strategic level. This document is clearly marked classified at the SECRET/NOFORN level and was reviewed by the Office of Secretary of Defense for Policy which confirmed that the document contains information classified at the SECRET level. Such possession also is in violation of the courier agreement that BISHOP signed. Bishop was not authorized to remove this classified document containing national defense information from his secure workspace and was not authorized to retain that document at his residence. The unlawful removal and retention of classified national defense information is a violation of Title 18, United States Code, Section 793(e).

18. On February 5, 2013, PERSON 1 tasked BISHOP to conduct research for her. She asked for him to advise her regarding what western nation's know about the operation of a particular naval asset of the People's Republic of China. This subject matter is outside of the scope of and not related to BISHOP's regular work assignments. Since that time, BISHOP has acted on her request. In addition to conducting open source research on the topic, BISHOP has been observed collecting and reviewing classified information concerning this subject matter, and in doing so, has misrepresented himself to United States government personnel as an active duty officer in order to gain access to classified information requested by PERSON 1. On February 28, 2013, agents assisting your affiant recovered classified documents from BISHOP's workspace related to the subject matter of PERSON 1's request. The documents recovered from the workspace were outside the scope of and not related to BISHOP's work assignments.

## CONCLUSION

19. In summary, my investigation has revealed that BISHOP has willfully communicated and retained classified information, which was in fact information related to the national defense, in violation of Title 18, United States Code, Section 793(e).

20. Based on my experience and review of the information gathered in this investigation, there is probable cause to support issuance of an arrest warrant for BISHOP for violations of 18 U.S.C. Section 793(e).

FURTHER AFFIANT SAYETH NAUGHT.

_____

Special Agent SCOTT FREEMAN
Federal Bureau of Investigation

Subscribed and sworn to before me this __14__ th day of March 2013

_____
United States Magistrate Judge
District of Hawaii

8